UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROCKIES EXPRESS PIPELINE LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:08-cv-00751-RLY-DML |
| | ) |
| ARVIN M. HOPKINS, 131.495 ACRES, *et al.*, | ) |
| | ) |
| Defendants. | ) |

# Order on Motion in Limine Regarding
# Expert Opinions of Steven K. Chitwood, Dkt. 919
# (as to Donald E. Bates Parcel Only)

This matter is before the court on a motion in limine filed by plaintiff Rockies Express Pipeline, LLC ("REX") to exclude from evidence at the compensation hearing scheduled for May 14-15, 2012, certain expert testimony by Steven K. Chitwood and related portions of his expert report. Mr. Chitwood has opined that the compensation due Mr. Bates as a result of REX's taking of the Easements is about $1,001,000. REX contends that the methodology Mr. Chitwood used to arrive at a "before" value of Mr. Bates's property is unreliable as a matter of law because Mr. Chitwood did not correctly apply it and because his opinion is impermissibly based on Mr. Bates's specific intended future use of the property. REX also contends that Mr. Chitwood's opinion of the "after" value of Mr. Bates's property is unreliable as a matter of law because he assigns "stigma" damages in an *ipse dixit* fashion without any supporting data.

Mr. Bates did not file a response to REX's motion.

## Analysis

Federal Rule of Evidence 702 permits expert testimony—defined as testimony regarding scientific, technical, or other specialized knowledge—if the testimony (a) is given by a person qualified as an expert by his knowledge, skill, experience, training, or education; (b) will assist the trier of fact to understand evidence or determine a fact at issue in the case; and (c) is sufficiently reliable. Expert testimony is reliable if it is based on "sufficient facts or data," "is the product of reliable principles and methods," and if "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

The court serves as gatekeeper to weed out expert testimony not sufficiently reliable or relevant to issues in the case or testimony offered by a person not sufficiently expert in the field of study that his testimony concerns.[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993); *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141-42 (1999). Determining whether expert testimony is sufficiently reliable for the fact-finder to consider requires a flexible approach, and while *Daubert* provides a non-exhaustive list of factors that may be used to determine reliability, courts have "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *United States v. Pansier,* 576 F.3d 726, 737 (7th Cir. 2009) (internal citations omitted; emphasis in original).

REX's appropriation of the Easements is a partial taking of Mr. Bates's property. To value Mr. Bates's damages caused by the appropriation, Mr. Chitwood uses a "before and after" method of valuation. That is, he valued the property at its highest and best use before the taking,

---

[1] REX accepts, as does the court, that Mr. Chitwood is an expert in the field of real estate appraisal.

then valued the property at its highest and best use after the taking, subtracting the after value from the before value to isolate the diminution in value resulting from the taking. This is a standard method of valuation in partial taking cases. *See, e.g., Crumpacker v. State,* 271 N.E.2d 716, 718-19 (Ind. 1971) (quoting 4 Nichols on Eminent Domain, § 14.232, *Before and after rule,* at p. 547) ("'[T]he measure of compensation when part of a tract is taken is the difference between the fair market value of the whole tract before the taking and the fair market value of what remains after the taking. Under this rule the damages sustained by the owner for the land taken and the damages to the remainder area are not segregated, but are treated as a unit.'") REX does not challenge that framework, but rather Mr. Chitwood's methodology in making the before and after valuations.

**A. Mr. Chitwood's before valuation is not reliable.**

To determine the before value of the property at its highest and best use, Mr. Chitwood used a "lot development" methodology, a species of a discounted cash flow approach to value. Property is valued under that method based on cash flow anticipated to be realized from development of a residential subdivision, taking into account income from sales of lots and expenses for development of lots over a period of years and then discounting the net income to present value. *See Lehigh-Northampton Airport Auth. v. Fuller,* 862 A.2d 159, 166-67 (Pa. Cmwlth. Ct. 2004) (citing J.D. Eaton, *Real Estate Valuation in Litigation,* 223 (Amer. Inst. of Real Estate Appraisers, 1982)). The court finds Mr. Chitwood's approach unreliable for two principal reasons.

1. <u>The valuation is impermissibly grounded in the landowner's specific intended use.</u>

The "lot development" method for valuing real estate finds some support in the case law, based on the notion that buyers in the marketplace would themselves use this method to determine the price they are willing to pay for real estate that is physically suited for development and for which demand is shown to exist. *See, e.g., United States v. 158.24 Acres of Land,* 696 F.2d 559, 563-64 (8th Cir. 1982) (discussing use of a lot development method so long as it considers all factors that a prospective purchaser would consider, including cost of subdivision, loss of land for streets and utility easements, platting and surveying expenses, road and street improvements, and cost of holding the property while it is being subdivided and sold, and the briskness of demand); *United States v. 341.45 Acres of Land,* 633 F.2d 108, 112 (8th Cir. 1980) (district court should have excluded landowner's evidence of value based on residential lot development because there was no evidence of actual demand within the reasonably near future).

But some courts have allowed valuation testimony based on this methodology only as a "last resort," when more conventional approaches to value—like the comparable sales method— are not available. *See Norman v. United States,* 63 Fed. Cl. 231, 271-72 (Fed. Cl. 2004), *aff'd,* 429 F3d. 1081 (Fed. Cir. 2005) (discussing subdivision development method of valuation). The reason for caution is that the methodology is particularly susceptible to misuse because it is "prone to error" and to being too speculative. *Id.* at 271.[2] The Indiana Supreme Court also has cautioned against the use of valuation methodologies relying on income capitalization approaches because of their vulnerability to speculation or their use as an improper attempt to

---

[2] In *Olson v. United States,* 292 U.S. 246, 257 (1934), the Supreme Court stated: "Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value...."

4

recover a landowner's lost profits. *State v. Bishop,* 800 N.E.2d 918, 925-26 (Ind. 2003) (and discussing *J.J. Newberry Co. v. City of East Chicago,* 441 N.E.2d 39, 42-43 (Ind. Ct. App. 1982)). *See also Lucre Corp. v. County of Gibson,* 657 N.E.2d 150, 153 (Ind. Ct. App. 1995), *trans. denied* (not error to exclude expert opinion of valuation based on capitalization method when land was neither improved nor producing income as of the date of the taking).

The Indiana Supreme Court and the Indiana Court of Appeals have frequently cautioned courts about permitting valuation evidence that is tied too closely to the landowner's intended specific future use of the property, because a landowner is not entitled to lost profits. *State v. Tri-State College,* 280 N.E.2d 813, 815 (Ind. 1972) ("inquiry as to damages cannot go into an intended specific use, because such damages are speculative"); *City of Lafayette v Beeler,* 381 N.E.2d. 1287 (Ind. Ct. App. 1978) (improper for court to allow expert valuation based on specific value per lot as contemplated by the landowner's residential lot development plan; "trial court erred in allowing the [landowner's] expert witness to testify concerning the aggregate value of hypothetical lots").

As the court in *Beeler* commented, the line between those circumstances in which expert valuation testimony based on a lot by lot, or subdivision development valuation is permissible and those where it is not can be a fine one. *See* 381 N.E.2d at 1292-94. When the testimony hews closely to showing what a reasonable buyer would have considered in valuing the property for purchase, such evidence is permissible. *See, e.g., Gradison v. State,* 300 N.E.2d 67, 72-73 (Ind. 1973); *State v. Church of Nazarene of Logansport,* 377 N.E.2d 607, 612 (Ind. 1978). But where the testimony strays toward a showing of what the landowner intended to do with his land and the profits he intended to make, the evidence is not permitted. *State v. Maplewood Heights Corp.,* 302 N.E.2d 782, 785 (Ind. 1973) (expert witness testimony based on the landowner's lot

5

division plan "should have been objected to upon the basis that it was speculative and likely to mislead the jury, in that it treated the land as developed residential lots, rather than as undeveloped or partially developed land having residential lot development as its highest and best use").

REX maintains that Mr. Chitwood's opinion of the before value of the property is based on Mr. Bates's specific intended future use and thus would be used improperly as evidence to compensate Mr. Bates "for improvements that he has not yet made [and] profits that he might earn in the future, if he were to devote his land to a particular use." *Maplewood Heights,* 302 N.E.2d at 785 (Ind. 1973) (owner not entitled to this kind of compensation). Mr. Bates has not offered argument or facts to refute that argument. The court agrees with REX.

        2.  <u>The calculation is fundamentally flawed because it includes no discount factor.</u>

REX also argues that even if Mr. Chitwood's opinion had been expressed in terms of what a likely prospective buyer at or near the time of the take would have considered in valuing and paying for the land because of its susceptibility as residential subdivision property, the lot development method used by Mr. Chitwood omits essential factors rendering his analysis unreliable. For example, his methodology does not discount the stream of income predicted to be generated by the sale of lots over the ten-year sales period but instead calculates a before value based on *gross* sales made at any time within the 10-year period. Without a discount factor, the before value is inflated. *See* REX's Memorandum in Support of Motion in Limine, Dkt. 920, at pp. 7-8.

As noted, Mr. Bates did not respond to REX's motion and thus offers nothing to contradict REX's arguments.

As discussed above, the court has agreed with REX that Mr. Chitwood's before value methodology is too speculative and unreliable for consideration by the Commissioners. The projected income, costs, lot layout, and other factual bases for the lot development methodology are derived from Mr. Bates's personal plans for the property and projected income and estimated costs. And given the susceptibility to misuse of this type of testimony and its speculative nature, it was particularly important that Mr. Chitwood not miss an important step in the methodology. Mr. Chitwood's failure to discount the estimated income stream based on the period over which lots were expected to be developed and sold further bolsters the court's determination that Mr. Chitwood's before method of valuation is not sufficiently reliable and must be excluded as evidence of value.

**B. An aspect of Mr. Chitwood's after valuation is not reliable.**

Mr. Chitwood's opinion regarding the value of Mr. Bates's property after the appropriation is based in part on stigma the property allegedly suffers because of its proximity to an underground natural gas pipeline. Mr. Chitwood's report reads in part:

> [T]he general stigma attached to this type of "hazardous" pipeline will have a tremendous effect on the future development of the property. . . . [T]he pipeline carries a stigma of potential hazard which this appraiser feels has a direct effect on the potential for development of the remaining land area for single family residential subdivision occupancy. The pipeline itself is described as a hazardous pipeline, which means the pipeline is designed for the transition of a hazardous liquid or gas. The pipeline is designed to transfer 1.8 [billion] cubic ft. of natural gas per day through the system. The ownership itself has resigned to not develop the property due to personal experience due to this type of transmission.

*See* Chitwood report, Dkt. 919-4, at pp. 22-23.[3]

---

[3] By separate entry, the court has addressed a 500-foot setback issue that Mr. Chitwood also addresses in his after-value analysis. The court ruled that evidence may not be presented that is inconsistent with or contradicts the court's earlier ruling in a separate matter regarding the construction and applicability of the Decatur County Ordinance that references a 500-foot

7

The "personal experience" referenced by Mr. Chitwood in the last line is a matter about which the court has ruled *in limine* may not be used as evidence or otherwise mentioned or argued in this case. *See* Order on Motion in Limine Regarding Wyoming Pipeline Explosion, Dkt. 984. As the court stated in that entry, to the extent that the market would attribute less value to property near underground gas pipelines because of marketplace fear of explosions, that factor is relevant to value. However, there must be some objective basis for translating fear of explosion into market value; the mere say-so of Mr. Chitwood is not enough.

Other courts have prohibited a landowner from testifying or alluding to fears of natural gas explosions as affecting the value of his land where the landowner offers no evidence that the market for comparable land reflects lower values because of safety concerns and the fear of explosion from an underground pipeline. *See, e.g., Southeast Supply Header, LLC v. 47.75 Acres in Covington County, Mississippi,* 2008 WL 553019 at *3 (S.D. Miss. Feb. 27, 2008) (prohibiting landowner from testifying about safety concerns and fear unless he has evidence "backed up by comparable sale data" that the marketplace reflects a reduction in value because of the fear of explosion); *Willsey v. Kansas City Power & Light Co.,* 631 P.2d 268, 280 (Kan. Ct. App. 1981) ("opinion of value [by] a qualified witness based on the existence of fear in the buying public in general" affecting market value is admissible, but "neither the owner nor anyone else may base an opinion of value on personal fear"); *Southern Indiana Gas & Elec. Co. v. Gerhardt,* 172 N.E.2d 204, 207 (Ind., 1961) (propensity of explosion admissible only because of effect on fair market value of the property). [4]

---

setback. In that matter, the court also permanently enjoined Decatur County from enforcing the Ordinance, including its 500-foot setback aspect.

[4]  In a 1959 case, *Northern Indiana Public Service Co. v. Darling,* 154 N.E.2d 881 (Ind. 1959), the Indiana Supreme Court purported to take judicial notice of the risk of fires from

8

Mr. Chitwood's report reveals no factual data or other bases on which he concluded that stigma damages reduce the value of Mr. Bates's land after the taking. Underground natural gas pipelines are not unusual and are becoming more and more commonplace in the United States. One would expect that if the presence of an underground natural gas pipeline makes residential development economically non-viable, then some market data would exist to evidence that. The court does not intend to suggest an absence of that data. But Mr. Chitwood does not rely on any. His deposition testimony reveals that he did not conduct any market analysis pertinent to the issue and his stigma opinion is a personal one and not market-based. That is not sufficient in this case, and Mr. Bates has not even tried to convince the court otherwise.

The court finds that Mr. Chitwood's opinion of the after value of Mr. Bates's property, to the extent of its reliance on stigma damages, is too unreliable for consideration by the Commissioners.

---

underground gas mains and stated that the jury "had the right to infer that the possible danger from fire or explosions, even though it might not happen on the [subject] property, did lessen the market value of the residue of the real estate." *Id.* at 883. This court doubts the Indiana Supreme Court would take the same stance today, with the country's greater experience and exposure to underground gas pipelines and public energy policy favoring the construction of pipelines. In any event, evidentiary issues for cases tried in federal court are questions of federal law. It is not obvious to the court that the real estate market stigmatizes residential land near underground natural gas pipelines. And even if it were, that diminution for stigma must be quantified. These matters require evidentiary support. *See Rosen v. Ciba-Geigy Corp.,* 78 F.3d 316, 318 (7th Cir. 1996) ("[A] district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist.").

**Conclusion**

The court GRANTS REX's motion in limine (Dkt. 919). Mr. Chitwood's opinions on the before value of Mr. Bates's property and the existence of a stigma because of fear of explosion affecting the after value of the property, as well as Mr. Chitwood's determination of the compensation owed Mr. Bates based on these matters, are not admissible at the compensation hearing.

So ORDERED.

Dated: 05/09/2012

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution: All ECF-registered counsel of record.